IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 10, 2004

## STATE OF TENNESSEE v. WILLIAM D. PENDERGRASS

**Direct Appeal from the Circuit Court for Hickman County**
**No. 02-5096CR-II    Russ Heldman, Judge**

---

**No. M2003-01769-CCA-R3-CD - Filed March 3, 2004**

---

The defendant was convicted of third offense driving under the influence (DUI) and driving on a revoked license. He contends on appeal that (1) the evidence was insufficient to support the convictions, (2) the trial court erred in denying his motion to suppress because the deputy did not have reasonable suspicion to initiate the stop, and (3) the deputy's mention of the horizontal gaze nystagmus (HGN) test during his testimony entitled the defendant to a mistrial. Concluding that no reversible error occurred, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Kenneth K. Crites, Centerville, Tennessee, for the appellant, William D. Pendergrass.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Michael J. Fahey, II, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Following a jury trial, the defendant, William D. Pendergrass, was convicted of third offense driving under the influence (DUI), a Class A misdemeanor, and driving on a revoked license, a Class B misdemeanor. He was sentenced to eleven months, twenty-nine days for his DUI conviction, to be suspended after service of 120 days, and he was fined $1100. He was sentenced to six months for his driving on a revoked license conviction, to be suspended after service of 130 days, and he was fined $500. The defendant timely filed his notice of appeal. He contends on appeal that (1) the evidence was insufficient to support the convictions, (2) the trial court erred in denying his motion to suppress because the deputy did not have reasonable suspicion to initiate the stop, and (3) the deputy's mention of the horizontal gaze nystagmus (HGN) test during his testimony entitled the defendant to a mistrial. We affirm the judgments of the trial court.

## Facts

During the late afternoon hours of August 18, 2001, Deputy Carl Mark Hooper of the Hickman County Sheriff's Department, received a dispatch that a red Chevrolet had been involved in a hit and run accident in the area where the deputy was patrolling. The deputy pulled into the parking lot of a church and began to observe traffic, looking for the suspect vehicle. As he was stationed in the parking lot, a vehicle, matching the description given by dispatch, passed by the deputy's location. He pulled in behind the vehicle and called in the license plate number to confirm whether it was the same vehicle that was reported earlier. Dispatch confirmed the identity of the vehicle and also noted that the license tag actually belonged to another vehicle. The deputy followed the vehicle for approximately one or two miles. The deputy observed the vehicle cross the double yellow line and then weave all the way back across the white line on several occasions. After observing the erratic driving, the deputy initiated a stop of the vehicle.

The deputy approached the vehicle and asked the driver, who was later identified as the defendant, for his license. The defendant stated that he did not have a driver's license. The deputy observed an open container of alcohol in the floorboard of the vehicle. He also noticed that the defendant had bloodshot eyes and smelled of alcohol. The deputy asked the defendant if he had been drinking, and the defendant stated that he had consumed four or five beers. A check of the defendant's driving status revealed that his license was revoked. After requesting that the defendant step out of the vehicle, the deputy administered several field sobriety tests, including the heel-to-toe test and the one leg stand. According to the deputy, the defendant was unable to successfully complete any of the tests. It was the deputy's opinion that the defendant was driving under the influence of alcohol. The deputy arrested the defendant and asked the defendant if he wished to take a blood alcohol test. The defendant refused to submit to a blood alcohol test and was transported to jail. The deputy never determined whether the defendant's vehicle was involved in an accident.

Mark Smith testified on behalf of the defendant. The defendant was pulled over in front of the witness's house. The witness observed the defendant after he had been placed under arrest. The deputy allowed the defendant to leave his electrical tools with the witness. According to Smith, the defendant did not appear to be under the influence. The witness testified that he had known the defendant since he was a child.

The defendant testified at trial that, on the day he was arrested, he had consumed approximately four beers during a four or five-hour period. He also admitted to having an open container of beer in his vehicle. The defendant did not recall performing any field sobriety tests. He denied crossing over any lines prior to being stopped by the deputy and denied that he was intoxicated.

**Analysis**

I. Sufficiency of the Evidence

In the defendant's Statement of Issues, he lists sufficiency of the evidence as one of the issues on appeal. However, there is no further mention of sufficiency in his brief. He has waived appellate review of the sufficiency issue by failing to provide any argument, citation to the record, or citation to legal authority. See Tenn. Ct. Crim. App. R. 10(b). In any event, after reviewing the record, we conclude that there is sufficient evidence to support the defendant's convictions. When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This Court will not re-weigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

Deputy Hooper observed the defendant driving erratically and initiated a stop. As the deputy approached the vehicle, he noticed an open container of alcohol in the floorboard of the vehicle. The defendant admitted to consuming four or five beers. The deputy testified that there was a smell of alcohol coming from the defendant and that the defendant had bloodshot eyes. In Deputy Hooper's opinion, the defendant failed the heel-to-toe test and the one leg stand. The jury obviously chose to credit the testimony of the deputy over that of the defendant and Smith. As to the driving on a revoked license conviction, the defendant admitted on the day of this incident that his license was revoked. After reviewing the record, we conclude that there was sufficient evidence to support the convictions for driving under the influence and driving on a revoked license.

II. Reasonable Suspicion

The defendant contends that the trial court erred by denying his motion to suppress because the stop of the defendant's vehicle was not based on reasonable suspicion. The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, the application of the law to the facts found by the trial court are questions of law that this Court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). Absent a showing by the defendant that the evidence preponderates against the judgment of the trial court, this Court must defer to the ruling of the trial court. State v. Cribbs, 967 S.W.2d 773, 795 (Tenn.1998).

The Fourth Amendment to the United States Constitution grants the right to be secure from unreasonable searches and seizures and prohibits the issuance of warrants without probable cause. Article I, § 7 of the Tennessee Constitution is identical in purpose and intent with the Fourth Amendment. State v. Troxell, 78 S.W.3d 866, 870 (Tenn. 2002). Under both constitutions, a warrantless search or seizure is presumed to be unreasonable, and the resulting evidence is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

These constitutional protections against unreasonable searches and seizures also apply to vehicles. Troxell, 78 S.W.3d at 870-71. In order to stop a vehicle, a law enforcement deputy must have probable cause or reasonable suspicion supported by specific and articulable facts to believe an offense has been or is about to be committed. State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002). In determining whether reasonable suspicion existed for the stop, a court must consider the totality of the circumstances. Binette, 33 S.W.3d at 219.

When a traffic stop is an investigatory stop, the scope of the deputy's actions must reasonably relate to the circumstances which prompted the stop; the detention must last no longer than necessary to effectuate the purpose of the stop. Troxell, 78 S.W.3d at 871. The officer must employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). The proper inquiry is whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998).

The defendant maintains that his vehicle was stopped based solely on the content of an anonymous phone call reporting a hit and run accident. However, Deputy Hooper's testimony at the suppression hearing contradicts this assertion by the defendant. Hooper testified at the suppression hearing that he followed the defendant's vehicle for approximately one or two miles before initiating the stop. The deputy testified that the stop of the defendant's vehicle was based on the deputy's

observations of the defendant's vehicle crossing the double yellow line, then weaving all the way back across the road, and crossing the white line on several occasions. The trial court found the deputy's testimony to be credible and found that there was reasonable suspicion for the stop. Nothing in the record preponderates against the findings of the trial court or the court's denial of the motion to suppress. This issue is without merit.

III. Horizontal Gaze Nystagmus Test

The defendant next contends that the deputy's mention of the horizontal gaze nystagmus (HGN) test during his testimony entitled the defendant to a mistrial. During the State's direct examination of Deputy Hooper, the following colloquy occurred.

Q. What did you have him do field sobriety-wise?
A. I had him do three tasks, the first one was a - - it's a horizontal gaze nystagmus test.
Q. Well, why don't we - - let me ask you this: Did you have him do any physical tests?
A. Yes.

The HGN test was not mentioned in the presence of the jury at any other time, and the deputy never testified as to the results of the test. Later, during the deputy's testimony, the defendant objected, and the jury was excused. The defendant asked the court for a mistrial based on the witness's earlier mention of the HGN test. The court denied the defendant's request for a mistrial.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Hall, 947 S.W.2d 181, 184 (Tenn. Crim. App. 1997). The burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). In making this determination, no abstract formula should be mechanically applied, and all circumstances should be taken into account. State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

Immediately following the deputy's reference to the HGN test, the State moved on to the other tests performed by the deputy. There was no suggestion of the results of the HGN test and no further mention of the test in front of the jury. The deputy testified that his opinion of the defendant's intoxication was based on the defendant's bloodshot eyes, the odor of alcohol, and his failure to properly perform the one leg stand and the heel-to-toe test. In view of these matters, as well as the overwhelming evidence of guilt, we conclude that the reference to the HGN test was harmless and the defendant was not unduly prejudiced by the deputy's brief remark. This issue is without merit.

**Conclusion**

Based on the foregoing reasoning and the record as a whole, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE