IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 9, 2005 Session

## STATE OF TENNESSEE v. CHARLES TAWWATER

**Appeal from the Circuit Court for Franklin County**
**No. 15647     J. Curtis Smith, Judge**

---

**No. M2004-02115-CCA-R3-CD - Filed April 26, 2005**

---

The defendant, Charles Tawwater, pled guilty in Franklin County Circuit Court to facilitation of the manufacture of methamphetamine, a Class D felony, and received two years probation in the Community Corrections Program. The defendant appeals upon certified questions of law from the denial of his motion to suppress evidence seized pursuant to a warrantless search of his car. He claims the trial court should have granted his motion because (1) the officers lacked probable cause or reasonable suspicion to believe he had committed a criminal offense when stopping his vehicle; (2) his consent to the search of his car was not voluntary; and (3) statements made by him to officers during his detention were inadmissible because he was not advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Norris A. Kessler, III, and Joseph S. Bean, Jr., Winchester, Tennessee (on appeal), and Michelle M. Benjamin, Winchester, Tennessee (at trial), for the appellant, Charles Tawwater.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; James Michael Taylor, District Attorney General; and William Bobo Copeland, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the warrantless search of the defendant's car, which a police officer observed hastily departing the site of an alleged methamphetamine laboratory. The search revealed various items commonly used to manufacture methamphetamine.

The two officers involved in the search testified at the suppression hearing. Winchester Police Sergeant Danny Mantooth testified that the circumstances giving rise to the search began as

he followed Douglas Owens. He said he observed Mr. Owens purchase a gallon of Coleman fuel, drive to his trailer, remove the fuel from his car, place it in his trailer, return to his car, and proceed to a Wal-Mart store. He said he followed Mr. Owens inside the store, watched him purchase twenty-five feet of plastic aquarium hose, and leave the store. He said that he radioed another officer, Sergeant Greg Branch, to stop Mr. Owens and that Sergeant Branch stopped him at the co-op. He said that when he arrived at the co-op, he informed Mr. Owens that he had watched him purchase the Coleman fuel and the plastic tubing. He said Coleman fuel is a solvent used to manufacture methamphetamine and plastic tubing is used to "gas off" the product. He said that he asked Mr. Owens if he had a methamphetamine laboratory ("meth lab") at his trailer and that Mr. Owens replied someone had dropped something off at his trailer with instructions for him to "gas it off." He said Mr. Owens admitted that he had never "gassed off" methamphetamine before but that he was going to try and had purchased the tubing for this purpose. He said that he asked Mr. Owens for permission to search the trailer and that Mr. Owens consented. He said that as he walked back to his car, he noticed Mr. Owens talking on his cellular telephone. He said he instructed Sergeant Branch to drive directly to the trailer, secure it, and not let anyone enter or leave because it might contain a meth lab. He said that Sergeant Branch left in his car and that he followed Mr. Owens as they drove to the trailer.

Sergeant Mantooth said that when he arrived at the trailer, the defendant's car was parked in front of it and Sergeant Branch was talking to the defendant. He said he knew the defendant. He said that he asked him if he had been inside the trailer and that the defendant responded he had. He said he told the defendant that the trailer was possibly being used as a meth lab and that Mr. Owens had consented to a search of it. He said that he asked the defendant if he knew anything about a meth lab and if he could search the defendant's car and that the defendant responded he did not know anything about a meth lab but "kinda hesitated" in his response to the search question. He said he told the defendant "if [he] had anything to hide just go ahead and give it to us and we'll talk about it later." He said the defendant replied that "Mr. Owens had called him, told him to take a black bag and get out of the trailer and leave in a hurry, get rid of the bag because the police was en route." He said that he asked about the location of the bag and that the defendant pointed toward the floorboard of the rear seat. He said he retrieved the bag from the car and discovered approximately thirty-two ounces of rubbing alcohol and a plastic bottle with black electrical tape inside the bag. He said that alcohol and acid are used in the manufacture of methamphetamine and that the plastic bottle with the tape tested positive for acid base. He said he also discovered in the glove compartment three or four boxes of pseudoephedrine, which is a precursor in manufacturing methamphetamine. He said the defendant was not arrested or taken into custody on that day.

On cross-examination, Sergeant Mantooth acknowledged that he did not ask the defendant to sign a consent to search form and that the defendant first refused his request to search saying, "I'd rather you not, you might have to get a search warrant or something like that." He said that he did not make a promise to the defendant in exchange for consent to search the car but admitted that he suggested the defendant give up whatever he had and "it would make things look better for him in court." He said the defendant subsequently changed his mind, gave consent, and told him about the black bag. He acknowledged that there was no incriminating evidence in plain view and that he did

not see the defendant purchase plastic tubing or possess Coleman fuel. He also acknowledged that Mr. Owens did not tell him the name of the person who had delivered something to his trailer and that he knew nothing of Mr. Owens' veracity.

Winchester Police Sergeant Greg Branch testified that he observed a car traveling at a high rate of speed on the highway and that when he caught up with the car, he realized it was the one Sergeant Mantooth had been looking for earlier that day. He said he stopped the car and called Sergeant Mantooth who arrived shortly thereafter. He said that he overheard Mr. Owens, the driver of the car, give Sergeant Mantooth consent to search his trailer. He said that he proceeded to the location of the trailer and that just as he arrived, he observed an off-white car backing out of the trailer's driveway "at a high rate of speed." He said the tires were spinning. He said that he informed Sergeant Mantooth someone was leaving and that the sergeant told him to "go ahead and stop that car and ask 'em to come back." He said he stopped the defendant approximately one-half block from the trailer and advised him that Sergeant Mantooth "needed him to come back to the trailer, wanted to talk to him and he was on his way." He said the defendant drove his car back to the trailer. He said that when Sergeant Mantooth arrived, he and the defendant talked for a few minutes but that he did not hear their conversation. He said he observed the defendant open the car door to show something to Sergeant Mantooth, who then removed a bag containing some bottles.

On cross-examination, Sergeant Branch acknowledged that he first noticed the defendant as he backed out of the trailer's driveway and that he did not see the defendant enter or leave the trailer. He acknowledged that he stopped the defendant at the direction of Sergeant Mantooth and said that the defendant was free to go "if he wanted to." He said he informed the defendant that Sergeant Mantooth was en route and wanted to talk to him. He acknowledged that he had his police car's blue light on when he stopped the defendant, that he followed the defendant back to the trailer, and that he made him get out of his car at the trailer site. He acknowledged that the defendant did not give him consent to search his car. On redirect examination, he said the defendant was not under arrest or in custody while at the trailer. He said that the defendant did not give him consent for a search of his car but wanted to talk to Sergeant Mantooth. This concluded the proof.

The trial court denied the defendant's motion to suppress, finding that the officers had probable cause to search the defendant's vehicle based upon Sergeant Mantooth's observing Mr. Owen's purchase of the fuel and plastic tubing, Mr. Owen's incriminating statements and subsequent telephone call, and the defendant's hasty departure from the trailer's location. The trial court found the facts sufficient to lead the officers to believe an offense had been or was about to be committed, i.e., that methamphetamine had been or was about to be manufactured in the trailer, and that the defendant, speeding away in his car, was involved with the crime. The trial court also found that the defendant's consent for the search was valid and that the defendant was not in custody so as to require that the officers advise him of his rights under <u>Miranda</u>.

Following the trial court's denial of the motion to suppress, the defendant pled guilty and reserved the following certified questions of law for appeal under Tenn. R. Crim. P. 37(b)(2)(i): Whether the trial court erred by (1) finding that the officers had probable cause to believe an offense

had been or was about to be committed by the defendant or, in the alternative, that the officers had probable cause to effectuate a stop of the defendant's vehicle; (2) finding that the defendant consented to the search; (3) finding that the defendant was not under arrest or in custody as to warrant advice of his Miranda rights; and (4) denying the defendant's motion to suppress.

Rule 37(b)(2)(i), Tenn. R. Crim. P., provides that an appeal lies from a plea of guilty if the defendant enters into a plea agreement but explicitly reserves with consent of the state and the trial court a certified question of law that is dispositive of the case and satisfies four additional requirements. Initially, we note that the defendant's issue concerning whether he was in custody or under arrest such that Miranda warnings were warranted is not dispositive of his case. Even if the defendant's statements to the officers were suppressed, he could be prosecuted based on the items seized from his car pursuant to the search. Accordingly, the Miranda issue is not properly before the court. Because the defendant met the requirements set forth in Rule 37 with respect to the remaining issues, the questions presented in this appeal are whether the stop of the defendant's car violated his constitutional rights against unreasonable seizures, whether his consent to search his car was valid, and whether the trial court erred by denying his motion to suppress the items seized.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

## I. VALIDITY OF THE STOP

The defendant claims the trial court erred by finding that the officers had probable cause to believe he committed an offense and stop his vehicle. He argues that he was seized in violation of the Fourth Amendment and article 1, section 7 of the Tennessee Constitution and that the information received from Mr. Owens lacked the "indicia of reliability" necessary to satisfy the two-prong test under State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989). The state contends the stop of the defendant's vehicle was constitutionally valid because Mr. Owens' statements taken with the officers' observations provided them with the reasonable suspicion necessary for the stop. The state does not explain, though, how reasonable suspicion justified the defendant's being returned to Mr. Owens' house. In any event, we conclude that the defendant is not entitled to relief on this issue.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 423 S.W.2d 857, 860 (1968)). An automobile stop constitutes a seizure

-4-

within the meaning of both the Fourth Amendment of the United States Constitution and article 1, section 7 of the Tennessee Constitution. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants are subject to seizure for violation of the law. See Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391 (1979); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause to arrest a suspect exists if the facts and circumstances within an officer's knowledge are sufficient to warrant a prudent person in believing that the suspect committed a criminal offense. Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964); State v. Melson, 638 S.W.2d 342, 350-51 (Tenn. 1982).

We conclude, as did the trial court, that probable cause existed to stop the defendant's vehicle. Mr. Owens' admissions and Sergeant Mantooth's observation of Mr. Owens' purchase of items used in the manufacture of methamphetamine were sufficient to warrant his belief that the trailer was used as a site to manufacture methamphetamine. When Mr. Owens made a telephone call shortly after giving consent to search the trailer, it was reasonable for Sergeant Mantooth to conclude that the call was related to the impending search and that Mr. Owens may have requested assistance in destroying or hiding evidence before the police arrived. Sergeant Branch was dispatched to the trailer to secure it based on Sergeant Mantooth's suspicions, and the first thing he observed when he arrived at the site of the meth lab was the defendant's car leaving "at a high rate of speed," wheels spinning. These circumstances, considered together, are sufficient to warrant a prudent person in believing that the defendant was involved in criminal activity by assisting Mr. Owens in removing contraband from the trailer.

When relying on information from an informant, the arresting officer must be able to demonstrate that the informant has a basis of knowledge and that he is credible or the information is reliable. See Jacumin, 778 S.W.2d at 436 (adopting two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969)); State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000). The defendant in this case complains that Mr. Owens' basis of knowledge and credibility were not established. We disagree.

As for the informant's basis of knowledge, the record reflects he told the investigating officers first-hand information concerning the contents of his trailer when he informed Sergeant Mantooth that he was going to try "gassing off" the methamphetamine that had been brought to him. This information was corroborated by Sergeant Mantooth's observation of his purchase of the tubing and Coleman fuel, which Mr. Owens admitted was obtained for this purpose.

As for the reliability of Mr. Owens' information, we recognize that admissions of crime, or statements against penal interest, may carry their own indicia of reliability. In State v. Moon, 841 S.W.2d 336, 340 (Tenn. Crim. App. 1992), this court observed:

The view which attaches reliability to a voluntary statement against penal interest is based upon an assumption about human behavior. "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." Thus, admissions of crime may carry their own indicia of credibility.

Id. (quoting United States v. Harris, 403 U.S. 573, 583-84, 91 S. Ct. 2075, 2082 (1971) (plurality opinion) (citation omitted). Based on these facts, we conclude that the informant's basis of knowledge and credibility required under Jacumin were established.

The defendant argues that imperfect driving, i.e., his departure from the trailer's driveway at a high rate of speed with wheels spinning, did not provide Sergeant Branch with the reasonable suspicion required to make a constitutionally valid stop of his car. He cites State v. Binette, 33 S.W.3d 215 (Tenn. 2000), and State v. Garcia, 123 S.W.3d 335 (Tenn. 2003). In both cases, our supreme court held that the defendant's less-than-perfect driving was not sufficient to give rise to reasonable suspicion that he was impaired, and, thus, the officer involved did not have the reasonable suspicion necessary to stop the defendant. See Garcia, 123 S.W.3d at 344-45; Binette, 33 S.W.3d at 220. Contrary to Binette and Garcia, the officers' decision to stop the defendant's car in this case was not based on his driving alone, but considered in conjunction with the additional circumstances we have discussed. Moreover, we have concluded the circumstances here provided the probable cause required to stop the defendant's vehicle, a more demanding standard than reasonable suspicion. See Pulley, 863 S.W.2d at 32.

## II. VALIDITY OF CONSENT

The defendant contends that the trial court erred by finding he gave valid consent for the search of his car. He asserts that he refused consent to search twice, and to two different officers, but that Sergeant Mantooth continued to press him to change his mind and then lied to him by stating that things would go better for him in court. He admits that he finally relented and gave consent but argues that it was not unequivocal, specific, intelligent, or uncontaminated by duress or coercion under the circumstances. The state argues that the defendant's consent was valid, given voluntarily and free from coercion. We agree with the state

The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-defined exceptions. See Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Before the fruits of a warrantless search are admissible as evidence, the state must establish by a preponderance of the evidence that the search falls into one of the narrowly-drawn exceptions to the warrant requirement. See State v. Shaw, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980). For

example, a warrant is not needed when there is a consent that is "unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). Thus, we address whether the consent to the search meets those requirements.

With regard to the circumstances underlying the defendant's consent to search, the record reflects that Sergeant Mantooth admitted that when he asked the defendant if he could search his car, the defendant "kinda hesitated" and told him he might have to get a search warrant. He said he then told the defendant that "if [he] had anything to hide just go ahead and give it to us and we'll talk about it later" and that "it would make things look better for him in court." Afterward, the defendant gave his consent to search the car and admitted that "Mr. Owens had called him, told him to take a black bag and get out of the trailer and leave in a hurry, get rid of the bag because the police was en route." When he asked about the location of the bag, the defendant pointed at the floorboard of the rear seat. Inside the bag, Sergeant Mantooth discovered various items used to manufacture methamphetamine and in the glove compartment, he found three or four boxes of pseudoephedrine.

The defendant argues that his consent is not unequivocal or intelligent because he did not change his mind until Sergeant Mantooth made a false statement to him regarding how things would go better for him in court if he cooperated. The defendant admits he changed his mind and gave consent, however, and we do not believe that Sergeant Mantooth's suggestion that he cooperate made his consent uncertain or vitiated the intelligent nature of it.

The defendant also contends that his consent was nonspecific and argues that he did not consent to a "full blown search." In determining the scope of consent, the relevant considerations include any express or implied limitations regarding the time, duration, area, or police activity necessary to accomplish the purpose or object of the search. State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002). "The scope of consent is not based on the subjective intentions of the consenting party or the subjective interpretations of the searching officer. Instead the standard is 'that of 'objective' reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the suspect.'" Id. at 871-72 (quoting Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04 (1991)). The incriminating items in this case were discovered in the glove compartment and in a bag on the floorboard of the rear seat. The officers testified that the defendant directed Sergeant Mantooth to the location of the bag. We believe that an objectively reasonable person would have understood that consent to search a car for drugs would include these areas and, thus, the search did not exceed the scope of the defendant's consent.

The defendant also argues that his consent was the result of coercion, duress, and threats and was involuntary. The determination of whether a consent to a search was voluntarily given is a question of fact to be determined from the totality of circumstances. State v. McCrary, 45 S.W.3d 36, 43 (Tenn. Crim. App. 2000) (citing State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996)). He asserts that Sergeant Mantooth's comment that things would "go better in court" placed him in a position where he had no choice but to consent because he feared that something bad might happen to him if he refused, in which case Sergeant Mantooth would have forced him to consent. Sergeant Mantooth testified that he told the defendant "if [he] had anything to hide just go ahead and give it

-7-

to us and we'll talk about it later" and that "it would make things look better for him in court." We fail to see how this statement was coercive or threatening or caused the defendant to believe he had no choice but to obey. Sergeant Mantooth testified he made no promises to the defendant. The defendant did not testify.

The defendant also contends that the consent to search was rendered invalid by his unlawful stop and illegal detention for questioning. We have concluded that the seizure of the defendant was based upon probable cause to stop him and arrest him, if necessary. Although he was not arrested at that time, his detention was valid. In sum, we conclude that the defendant's consent to search his car was unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.

Because the officers had probable cause to stop the defendant's car and the defendant gave valid consent to the search, we conclude the trial court properly denied the defendant's motion to suppress. Based on the foregoing and the record as a whole, the judgment of the trial court is affirmed.

 

_____
JOSEPH M. TIPTON, JUDGE