592 So.2d 363 (1992)
STATE of Florida, Appellant,
v.
Roy David JONES, Appellee.
No. 91-815.
District Court of Appeal of Florida, Fifth District.
January 17, 1992.
*364 Robert A. Butterworth, Atty. Gen., Tallahassee, and Anthony J. Golden, Asst. Atty. Gen., Daytona Beach, for appellant.
H.T. Smith, Miami, for appellee.
HARRIS, Judge.
Roy David Jones, the owner of the 1976 Pontiac Grand Prix involved herein, was riding as a passenger when the vehicle was stopped for a speeding violation. The driver was given a warning ticket and Jones, as owner, was asked if they were carrying any "illegal firearms, narcotics, contraband inside the vehicle." When Jones responded in the negative, the officer asked if he could "search the vehicle." Jones consented to a search of the vehicle.
A search of the interior of the vehicle proved negative; however, in inspecting the exterior of the vehicle, the officer noticed that the gas tank was supported by half-painted bolts. He also noted that the bolts on this fifteen year old vehicle had what appeared to be brand new washers on them. Also the neck of the gas tank appeared to have been cut and a five inch rubber hose had been installed either for flexibility or ease in shortening or lengthening the tank and it did not appear that the tank could be filled. Further, the middle section of the tank on the top at the rear appeared to have been altered. Finally the tank lid was not secured by bolts or screws.
These observations were made by visual inspection and without any dismantling. Because of these observations and because the officer had attended a training program related to modified gas tanks, he became suspicious. In addition, he observed that the driver was especially nervous and that occupants of the vehicle had given contradictory statements as to which of the occupants were related. The officer removed and dismantled the gas tank and unsurprisingly found a large stash of cocaine.
Jones moved to suppress this evidence on the basis that the removal of the gas tank exceeded the authority given by the consent to search the automobile. He contends that since the officer asked whether he was carrying contraband inside the vehicle, his consent must be construed to be limited to an "inside the vehicle" search. See State v. Wells, 539 So.2d 464 (Fla. 1989). The trial court agreed. We reverse.
The officer asked to "search the vehicle," not the interior, and the response was a general, not a limited, affirmance. The officer, after all, was looking for contraband. He was an experienced officer and was aware that drug dealers do not normally leave contraband lying on the seats or on the floorboard.[1]
Jones' consent is only relevant to give the officer the authority to detain the vehicle for a reasonable time to search the vehicle and to examine its surfaces. Jones argues that the general consent would not permit the dismantling of any part of the vehicle.[2] Even if this were true, if during the consent search the officer establishes probable cause to believe contraband may be present, he is justified in extending the search.[3] Such was the case here.
In United States v. Thompson, 928 F.2d 1060 (11th Cir.1991), cert. denied, ___ U.S. *365 ___, 112 S.Ct. 270, 116 L.E.2d 222 (1991), the court upheld a search by the coast guard which proceeded from, but exceeded the authority generally granted by, a safety search. The court held:
We find that the presence of unaccounted for space, the fresh smell of fiberglass, the bubbled composition of the fiberglass resin, the location of the hidden compartment, and the location of the boat in the Windward Passage, constituted probable cause which authorized the coast guard to inspect the hidden compartment.
Thompson at 1066.
Essentially what the Thompson court held was that the discovery of modifications that indicated a hidden compartment on a boat located in a route often taken by drug smugglers was sufficient to raise probable cause to justify the extended search. In our case, there was clear evidence that the gas tank had been modified on a vehicle being operated by nervous, contradictory persons on the Florida Turnpike, an expressway not unknown to drug smugglers.
In United States v. Arango, 912 F.2d 441 (10th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991), the court upheld the arrest of the driver of a truck stopped for a traffic violation who stated that he was going "to Denver for a two week vacation." The officer became suspicious because of the lack of adequate luggage for such a stay. After obtaining a consent to search, the officers looked in the bed of the truck. Although they found nothing in the bed of the truck, it "didn't seem right" because the bed was very shallow. The officers removed a rubber mat covering the bed and found evidence of modification. The court stated:
By observing the bed of the truck and knocking on it, Hillin and Johnson discovered evidence indicating that the truck had a hidden compartment running underneath the bed. We hold that this evidence, together with the inadequate amount of luggage for Arango's purported two-week vacation, supplied probable cause to arrest Arango.
We hold that when a trained law officer observes a particularly nervous driver accompanied by occupants of the vehicle who cannot agree if they are related or not and then finds conclusive evidence that the gas tank has been altered and the vehicle is on a highway frequented by drug smugglers, probable cause exists to extend a consent search into a probable cause search.
REVERSED and REMANDED.
W. SHARP, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting.
I respectfully dissent.
A person who consents to a search has the right to withdraw that consent. United States v. Dyer, 784 F.2d 812 (7th Cir.1986); United States v. Ward, 576 F.2d 243 (9th Cir.1978); Mason v. Pulliam, 557 F.2d 426 (5th Cir.1977); United States v. Ibarra, 731 F. Supp. 1037 (D.Wy.), dismissed, 920 F.2d 702 (10th Cir.1990), cert. granted and judgment vacated on other grounds, ___ U.S. ___, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991). After obtaining the consent of this appellee the policeman put the appellee in a locked police car out of view of the vehicle being searched. At that point the right to withdraw the consent was taken from appellee and the search became, in my view, non-consensual. Then, after the seizure of appellee and his incarceration, came the viewing by the policeman that gave rise to the suspicion mentioned in the majority opinion. The policeman then proceeded to exceed, in my opinion and that now expressed by appellee, the bounds of the original consent. The trial judge apparently agreed. I would affirm.
NOTES
[1] See, e.g., United States v. Olivier-Becerril, 861 F.2d 424 (5th Cir.1988) (drugs in secret compartment under trunk); United States v. Espinosa, 782 F.2d 888 (10th Cir.1986) (drugs hidden inside side panel by car's rear seat); United States v. Lopez, 777 F.2d 543 (10th Cir.1985) (drugs in panel behind stereo speaker).
[2] Since general consent substitutes for a search warrant, I see no reason why the scope of a search conducted under such consent should not be coextensive to that of a search under warrant. The "catch me if you can" attitude evidenced by a drug smuggler who grants consent to search, should justify the broadest construction of the limits of a search. To infer otherwise would not only imply that the consenter is less than sporting but also that he does not know the meaning of "search"  to look into or over carefully or thoroughly in an effort to find or discover something; to look through or explore by inspecting possible places of concealment; to make painstaking investigation or examination.
[3] United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).