IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 5, 2002 Session

## STATE OF TENNESSEE v. DAVID WALTER TROXELL

**Appeal by permission from the Court of Criminal Appeals**
**Circuit Court for Dickson County**
**No. CR- 4933      Hon. Robert Burch, Judge**

---

**No. M2000-01100-SC-R11-CD - Filed May 28, 2002**

---

The defendant, David Walter Troxell, was charged with possession with intent to sell and/or deliver a controlled substance after officers discovered approximately 300 grams of cocaine in the gas tank of his pickup truck. The trial court suppressed the evidence after finding that the search of the undercarriage and gas tank of the defendant's vehicle exceeded the scope of the defendant's consent to search. The Court of Criminal Appeals reversed the judgment of the trial court and remanded the case for further proceedings. After carefully considering the record and the relevant authorities, we conclude that the officer's search of the undercarriage and gas tank of the defendant's vehicle violated the Fourth Amendment to the United States Constitution and article I, § 7 of the Tennessee Constitution because it exceeded the scope of the defendant's consent and resulted in the prolonged and unreasonable detention of the defendant. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed;**
**Judgment of the Trial Court Reinstated.**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined. FRANK F. DROWOTA, III, C.J., filed a dissenting opinion.

William B. (Jake) Lockert, III, District Public Defender, Twenty-Third Judicial District, for the appellant, David Walter Troxell.

Paul G. Summers, Attorney General & Reporter; Michael Moore, Solicitor General; Daryl J. Brand, Associate Solicitor General; Marvin E. Clements, Jr., Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Kim G. Menke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

The evidence presented at the suppression hearing revealed that on November 11, 1999, the defendant, David Walter Troxell, was stopped for speeding on Interstate 40 by Trooper Mark Norrod of the Tennessee Highway Patrol.[1] Troxell, who was traveling 78 to 80 miles per hour in a 70 miles per hour zone, admitted that he had accelerated to pass a tractor-trailer truck. Troxell produced his driver's license and said that he was driving a company truck registered in the name of his employer's wife.

Trooper Norrod issued a warning citation to the defendant and explained that it would not require a court appearance or a fine. Trooper Norrod then asked the defendant, "Do you have any weapons in the vehicle?" Troxell responded, "No, nothing." When Trooper Norrod asked if he could "take a look," Troxell answered, "Yeah, go ahead."[2] Trooper Norrod conducted a pat down search of the defendant and then searched the interior compartment of the pickup truck and all of the luggage inside. During the search, Troxell was led to the side of the roadway by another officer who had arrived at the scene, Trooper Ferrell.

After completing an extensive search of the interior of the pickup truck and the luggage therein that lasted nearly 20 minutes, Trooper Norrod then examined the underside of the vehicle. He observed that the bolts and hoses to the gas tank appeared to have been recently removed, and when he tapped on the gas tank, in his opinion it did not "resonate" as it would if it held only fuel. After obtaining a mirror and a flashlight from his patrol car, Trooper Norrod again looked under the truck and observed silicone sealant on and around the gas tank, which he believed was "not normal." Based on these observations and his experience in interdiction, Trooper Norrod concluded that there was something inside the tank other than fuel and that "it could have been [weapons]." Trooper Norrod instructed the defendant to drive to a service station so the gas tank could be removed. After asking that the owners of the vehicle be notified as to what was occurring, the defendant drove to the service station where the gas tank was removed and 300 grams of cocaine were discovered inside.[3]

Trooper Norrod admitted during the suppression hearing that although he asked the defendant specifically about weapons and not drugs, a K-9 unit arrived at the scene and a drug detection dog

---

[1]     The evidence considered by the trial court at the suppression hearing included the testimony of Trooper Norrod and the defendant, as well as a videotape of the encounter.

[2]     Although Trooper Norrod testified that he requested consent prior to the issuance of the citation, the videotape of the encounter clearly reveals that he requested consent after the citation was issued.

[3]     The fuel tank also contained gasoline. Apparently, a protective wrap was used to avoid contaminating the cocaine.

conducted a sweep of the vehicle, which was negative. He testified that "in his mind," the defendant's consent meant that he could search "anywhere" and that Troxell never objected to the search at any time. Trooper Norrod conceded, however, that "most people might reasonably think that would mean [he was] going to look inside the cab of their truck." Troxell testified during the suppression hearing that he believed the officer was going to search the interior cab of the pickup truck and that he did not object or attempt to limit the search because he had been led to the side of the road by Trooper Ferrell. Trooper Norrod testified that Troxell was moved out of the way so that the events could be videotaped and for safety and security reasons.

After considering the testimony and viewing the videotape of the encounter, the trial court found that the search exceeded the scope of the defendant's consent and suppressed the evidence. The trial court stated:

> If the officer had asked for a consent to search for drugs in the vehicle, I think this would have been a valid consent, because that would be one of the places that could be searched for drugs. But for weapons, I tend to agree with . . . the Defense . . . . One wouldn't normally think about weapons under the underside or secreted in some concealed fashion.

The Court of Criminal Appeals reversed, however, concluding that Trooper Norrod's belief that the defendant's consent to search "in the vehicle" encompassed the undercarriage and gas tank of the truck was "objectively reasonable." The appellate court remanded the case for trial.

We granted the defendant's application for permission to appeal.


**Standard of Review**

A trial court's findings of fact in a suppression hearing will be upheld on appeal unless the evidence preponderates against those findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Where the issue involves an application of law to undisputed facts, a question of law is presented which will be subject to *de novo* review. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000); State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). Because the material facts in this case are not in dispute, our review of the legal issues is *de novo*.


**Search and Seizure**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." Article I, § 7 of the Tennessee Constitution similarly prohibits unreasonable searches and seizures and is identical in intent and purpose with the Fourth

-3-

Amendment. State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). "'Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (quoting State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)).

The federal and state constitutional prohibitions against unreasonable searches and seizures also apply to vehicles. See State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). A law enforcement officer's stop of a vehicle therefore requires that the officer have probable cause, or reasonable suspicion supported by specific and articulable facts, to believe that an offense has been or is about to be committed. State v. England, 19 S.W.3d 762, 765 (Tenn. 2000).

Because a traffic stop is an investigative stop, the officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place," Terry v. Ohio, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968), and the detention "must be temporary and last no longer than necessary to effectuate the purpose of the stop," Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); State v. England, 19 S.W.3d at 767-68. Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Florida v. Royer 460 U.S. at 500, 103 S. Ct. at 1326. As this Court has said, "the proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." State v. Simpson, 968 S.W.2d at 783 (citation omitted). Otherwise a reasonable traffic stop can become unreasonable and constitutionally invalid "if the time, manner or scope of the investigation exceeds the proper parameters." United States v. Childs, 256 F.3d 559, 564 (7th Cir. 2001); see also State v. Morelock, 851 S.W.2d 838, 840 (Tenn. Crim. App. 1992).

**Consent**

When evidence is seized as a result of a warrantless search of a vehicle, the State must establish that the search was conducted pursuant to one of the exceptions to the warrant requirement. State v. Keith, 978 S.W.2d at 865. One exception is a search conducted pursuant to an individual's consent. Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). To satisfy the constitutional reasonableness standard, the consent must be "'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" State v. Simpson, 968 S.W.2d at 784 (quoting State v. Brown, 836 S.W.2d 530, 547 (Tenn.1992)). Moreover, even if the consent is voluntary, evidence seized in the search will not be admissible if the search exceeds the scope of the consent given. See generally 3 Wayne R. LaFave, Search and Seizure § 8.1(c) (3d ed. 1996).

In determining the scope of consent, the relevant considerations include any express or implied limitations regarding the time, duration, area, or intensity of police activity necessary to accomplish the stated purpose of the search, see id., as well as the expressed object of the search, Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04 (1991) ("A reasonable person may

be expected to know that narcotics are generally carried in some form of a container.").[4] The scope of consent is not based on the subjective intentions of the consenting party or the subjective interpretations of the searching officer. Instead the standard is "that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect." Florida v. Jimeno, 500 U.S. at 251, 111 S. Ct. at 1803-04.

## Analysis

Turning to the present case, the defendant argues that his consent to search for "weapons in the vehicle" was limited in scope to the interior compartment of the pickup truck and that the search of the undercarriage and gas tank of the vehicle exceeded the scope of the consent. The State argues that the defendant consented to the initial search, that the defendant did not object to or limit the search, and that Trooper Norrod's search of the undercarriage and gas tank of the vehicle did not exceed the scope of the consent.

In determining the scope of the consent to search, we first examine the verbal exchange between Trooper Norrod and the defendant. After issuing a warning citation for speeding, Trooper Norrod asked whether the defendant had "any weapons *in* the vehicle." When the defendant said "no, nothing," the officer said, "Okay if we take a look?" The verbal exchange therefore expressly indicated that the officer intended to search only for "weapons" that were "in the vehicle," and there was nothing to indicate that the search would encompass more than just the vehicle's interior. Indeed, Trooper Norrod admitted that "most people might reasonably think that would mean [he was] going to look inside the cab of their truck." Accordingly, applying a common sense interpretation to the verbal exchange, it was objectively reasonable to conclude that the consent to search included only the interior of the vehicle and any containers that may have contained weapons.

The dissent disputes this interpretation and instead concludes that "in the vehicle" not only meant "under the vehicle" but also "in the gas tank." We simply disagree that the word "in" may be so broadly stretched, particularly given that the burden of establishing that a warrantless search was lawful rests with the State, not the defendant. Moreover, of the cases cited by the dissent from other jurisdictions, only two involve searches of gas tanks; in each, the stated exchange regarding the scope of consent is easily distinguished from the present case. See United States v. Anderson, 114 F.3d 1059 (10th Cir. 1997) (search including the undercarriage and the gas tank did not exceed the scope of consent where the defendant said officer could "scout around" and search the "carpet or whatever"); State v. Jones, 592 So.2d 363 (Fla. Ct. App. 1992) (holding that search of the

---

[4]    See also People v. Najjar, 984 P.2d 592, 596 (Colo. 1999) ("Officers who receive consent to search for a stolen wide-screen television set . . . would act unreasonably by expanding their search to include small containers or drawers where such an item could not possibly be located."); State v. McCrary, 45 S.W.3d 36, 44 (Tenn. Crim. App. 2000) (When a motorist consents to a search for alcohol, narcotics, and weapons, it is objectively reasonable for the officer to conclude that the search encompasses the "covered, but easily accessible, cargo area of the vehicle and any unlocked containers or luggage inside the vehicle" that may contain these items.).

undercarriage of a car and fuel tank did not exceed the scope of consent and distinguishing "search the vehicle" from a search of the "interior" of the vehicle).

It follows from our conclusion that it was <u>not</u> objectively reasonable to believe that the consent to search "in the vehicle" would permit Trooper Norrod to examine the undercarriage and gas tank of the vehicle while continuing and prolonging the detention of the defendant. It is worth emphasizing that at this stage of events, the defendant had been stopped only for speeding and that the officer completed his investigation into this traffic offense by issuing only a warning citation. After issuing the citation, however, Trooper Norrod requested the defendant's consent to search in the vehicle for weapons, then conducted an extensive, nearly 20-minute search of the interior of the vehicle and its contents and conducted a sweep of the vehicle by using a drug detection dog. Despite finding no evidence of weapons or drugs, Trooper Norrod nonetheless exceeded the scope of the defendant's consent and continued the detention of the defendant by then crawling under and examining the underside and gas tank of the vehicle.

We reject the dissent's arguments that Trooper Norrod's belief that the consent included any and all areas in or under the vehicle was objectively reasonable in light of the officer's experience and knowledge that weapons may be concealed in a vehicle's gas tank. While an officer's experience and subjective knowledge may be relevant to the analysis, it is no more dispositive of what is "objectively reasonable" than is the defendant's subjective expectation. Indeed, given that the burden of establishing the legality of a warrantless search rests with the State, it would be objectively reasonable to expect that an educated and experienced law enforcement officer has the verbal capacity to say "under the car" and "gas tank" when in fact those areas are within the parameters of the requested consent. <u>See</u> <u>United States v. Coburn</u>, 876 F.2d 372 (5th Cir. 1989) (officer requesting consent specifically mentioned search of fuel tank). Such words would hardly amount to the imposition of an overly burdensome "high level of specificity" as feared by the dissent.

Finally, we reject the State's argument that the defendant's failure to object to or limit the continued search in and of itself supported the conclusion that Trooper Norrod's view of the scope of the consent was objectively reasonable or that the resulting prolonged period of detention was permissible. Troxell had been led to the side of the road by another officer for the purpose of getting him out of the way as the search progressed, which Troxell described as "irritating" and a "nuisance." Although a defendant's later expressed language, coupled with silence, may be evidence of an expansion of the scope of the consent, a defendant's silence alone cannot expand the scope of the initial consent or allow a prolonged and continued detention. <u>Compare</u> <u>United States v. Anderson</u>, 114 F.3d at 1065 (the defendant's responses broadened the initial scope of consent).

## **Conclusion**

After carefully considering the record and the relevant authorities, we conclude that the officer's search of the undercarriage and gas tank of the defendant's vehicle violated the Fourth

Amendment to the United States Constitution and article I, § 7 of the Tennessee Constitution because it exceeded the scope of the defendant's consent and resulted in the prolonged and unreasonable detention of the defendant. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court. Costs of this appeal are taxed to the State.

_____
E. RILEY ANDERSON, JUSTICE