# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 29, 2005 Session

## STATE OF TENNESSEE v. JUSTIN PAUL BRUCE

**Appeal from the Criminal Court for Anderson County**
**No. A3CR0301     James B. Scott, Jr., Judge**

_____

### No. E2004-02325-CCA-R3-CD - Filed August 22, 2005

_____

Before the court is an appeal by the State as of right pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure. The defendant, Justin Paul Bruce, moved to suppress evidence seized during a search of his automobile. The trial judge concluded that the evidence had been illegally seized and granted the motion to suppress. We affirm the judgment of the trial court and remand this case for further proceedings.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

J. Thomas Marshall, Jr., District Public Defender, for the Appellee, Justin Paul Bruce.

Paul G. Summers, Attorney General & Reporter; David E. Coenen, Assistant Attorney General; James N. Ramsey, District Attorney General; and Jan Hicks, Assistant District Attorney General, for the Appellant, State of Tennessee.

### OPINION

This case represents another step in the legal evolution of narcotics detection through canine "sniffs." It is settled in terms of federal constitutional interpretation and Tennessee law that the "sniff" of a narcotics-seeking canine is *sui generis* and does not implicate any legitimate privacy interest; consequently, a canine sniff does not constitute a search under the Fourth Amendment and requires neither probable cause nor reasonable suspicion. *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637 (1983); *State v. England*, 19 S.W.3d 762 (Tenn. 2000). Even so, when a canine sweep is ancillary to a legitimate traffic stop, it may constitute an unlawful search if the suspect is detained beyond the time necessary to complete the traffic stop because the detention itself becomes unlawful. *See United States v. Jacobsen*, 466 U.S. 109, 124, 104 S. Ct. 1652, 1662 (1984) (seizure that is lawful at its inception can violate Fourth Amendment if its manner of execution unreasonably infringes interests protected by constitution); *State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002)

(reasonable traffic stop can become unreasonable and constitutionally invalid if time, manner, or scope of investigation exceeds the proper parameters).

In this case, the trial court ruled that "the canine sweep of the defendant's vehicle occurred after the time necessary to complete the traffic stop." The trial court thus granted the defendant's motion to suppress marijuana and drug paraphernalia found during a search of the defendant's automobile, which was based on a positive canine alert.[1] The state challenges that ruling and asks us to reverse the order granting the suppression motion.

We begin by recounting the facts underlying the suppression ruling and note that the defendant did not contest the legitimacy of his traffic stop for speeding. At the hearing on the suppression motion, Clinton Police Department Officer Darvin Cox testified that he stopped the defendant's vehicle for speeding on April 5, 2003. The stop occurred at approximately 9:51 p.m. on Charles Seivers Boulevard just west of Miller Road. The defendant was traveling 104 miles per hour in a 55 miles-per-hour zone.

Officer Cox explained that after the stop, both he and the defendant exited their respective vehicles. The defendant walked to the front of the police vehicle, at which point Officer Cox told the defendant that he "observed [him] running 104 miles an hour in a 55." The defendant's response was "that there was no traffic out, and he just wanted to open it up." Officer Cox advised the defendant that he was going to issue a citation, and Officer Cox testified that he asked the defendant to return to his vehicle, to which the defendant replied that he would "stand right here, that'll be fine." Officer Cox then stepped back to his patrol car, picked up his citation book, opened it to begin writing, and simultaneously called K-9 Officer Rick Coley to come to the scene. Officer Cox testified that he called Officer Coley because he was suspicious that the defendant did not want the officer near his vehicle and because as the officer spoke to the defendant, "he wouldn't look me in the face[;] [h]is hands were dug down in his pockets[;] [h]e had like a nervousness about his person[, and] there was a reluctance to go back to his car." In other words, Officer Cox "suspected drugs."

Officer Cox estimated that Officer Coley arrived in five to six minutes. During that time, Officer Cox said that he was writing "all the pertinent information" for the one-page citation and was running a check for any possible outstanding local warrants on the defendant. Officer Cox was still filling out the citation when Officer Coley walked up to the cruiser. Officer Cox denied that he stalled in completing the citation to give Officer Coley time to arrive, and Officer Cox maintained that it took him no longer than usual to issue the citation to the defendant.

---

[1] We note that the Anderson County Grand Jury returned a three-count indictment charging the defendant in Count 1 with possession of marijuana, in Count 2 with possession of drug paraphernalia, and in Count 3 with operating a motor vehicle in excess of the posted speed limit. In our opinion, the trial court's ruling did not reach the indicted charge of speeding in Count 3.

-2-

Officer Cox communicated his suspicions to Officer Coley, at which point Officer Cox got out of his cruiser and approached the defendant to obtain additional information for the citation. Officer Cox asked the defendant his height, weight, and year of his vehicle. Officer Cox was uncertain when the canine sweep actually occurred. He recalled handing the citation and driver's license back to the defendant. He testified, "And as soon as I was through, I asked the defendant, I said: Mr. Bruce, by the way, do you have any drugs in your car? Would you mind if I searched your vehicle?" Officer Cox said that the defendant's response was: "You've got a canine here, let him find it." It was at that point that Officer Coley advised Officer Cox that he had already conducted a canine sweep and that the dog had "alerted" on the driver's door. One point eight grams of marijuana were discovered in a plastic baggie positioned between the driver's seat and the console of the car.

Officer Cox estimated that 17 to 18 minutes elapsed between the time he stopped the defendant's vehicle and the time when Officer Coley arrived with his dog. He was less certain how much time elapsed between calling Officer Coley and Coley's arrival. He testified, "I'm not for sure, that was eight minutes," and "If I'm not mistaken, it was six-to-eight minutes." Officer Cox claimed that 17 to 18 minutes is the average amount of time it takes to fill out a traffic citation, and he added that it also depended on how long it took the dispatcher to relay back to him the information about the wants and warrants.

On cross-examination, Officer Cox clarified that the 17- to 18-minute period referred to the time between pulling the defendant over for the traffic stop and when the canine "alerted" on the car, but he added, "If I'm not mistaken, that'd be my speculation." The officer affirmed that as he was pulling the defendant over, he contacted the dispatcher, called in the stop as a traffic stop, and provided the license number of the defendant's vehicle. Officer Cox did not recall if the dispatcher responded with a name or a vehicle description for the license number. He also could not recall how long it took the dispatcher to get back to him with the information that no warrants were outstanding for the defendant.

In terms of filling out the citation, Officer Cox testified on cross-examination that it took him eight minutes to write the defendant's name, address, and the fact that he was speeding and to check for outstanding local warrants. The officer admitted that much of the information for the citation, such as name, address, and driver's license number, expiration date, and class of license was contained on the defendant's driver's license, which he consulted as he was writing up the citation.

On redirect examination, Officer Cox said that he actually removed the marijuana from the defendant's vehicle. The state inquired, "And had you approached the driver's side window when you first stopped him, would you have been able to see that in plain view?" The officer replied, "No, ma'am," and explained that the marijuana was "[b]etween the seat and the console, tucked down in-between the seat." A pack of "rolling papers" was with the marijuana. The officer did not recall if he detected the odor of marijuana when he approached the driver's side of the vehicle.

The defendant took the stand and admitted that he was speeding when Officer Cox stopped him. He denied, however, immediately getting out of his vehicle. He testified, "At no time did I ever step out of the car without his request. He was on my door side when he got the i.d. from me." After obtaining the identification, the officer instructed the defendant to get out of his vehicle, and the two men walked to the front of the officer's cruiser. The defendant said that he provided his driver's license and insurance card to the officer. The defendant estimated that it took the officer "about ten minutes" to write the "ticket."

According to the defendant, as the officer was writing the citation, "a couple of more cars pulled up but they stood to the rear where [the defendant] couldn't see [']em." After the officer returned the defendant's license and gave him the citation, the defendant put both items in his right back pocket and turned around at which time he saw a dog being led around his vehicle; the dog "immediately sat down" when he reached the driver's side door. The defendant testified that he was never told that he could leave and that he did not believe that he was free to leave.

On cross-examination, the defendant acknowledged that he had been stopped multiple times and in different counties for speeding. In terms of being allowed to leave after receiving the written citations, the defendant distinguished the earlier incidents on the basis that he "never was asked to step out of the car in any of them situations." The defendant reiterated the sequences of events in the instant case as Officer Cox approaching his vehicle, getting the defendant's license, returning to the police cruiser, and later asking the defendant to step out of his vehicle. The defendant denied having used any intoxicants the evening he was stopped, although he admitted that he possessed the marijuana for personal use.

At the conclusion of the hearing, the trial court took the motion under advisement and requested that the parties submit legal briefs on the suppression issue. The trial court issued a written order on October 29, 2004, sustaining the motion to suppress. That order provides as follows:

> This cause came on to be heard on April 19, 2004, before the Honorable James B. Scott, Judge of the Criminal Court for Anderson County, Tennessee, upon the Defendant's motion to suppress evidence seized as a result of a dog sniff that occurred without the Defendant's consent and after the Defendant had been detained for an unreasonably long time for the writing of a speeding ticket. During the April 19, 2004 evidentiary hearing, the Court heard, weighed, and evaluated testimony from Officer Darvin Cox of the Clinton Police Department and from the Defendant. The only exhibit admitted into evidence was the citation for speeding that Officer Cox wrote for the Defendant.
>
> After careful consideration of the testimony, exhibit, arguments and briefs of counsel, and the record of this cause as a

whole, the Court finds that the Defendant was illegally detained, without probable cause or reasonable suspicion, after the reasonable time for issuance of a speeding citation had passed. The officer's testimony that seventeen (17) to eighteen (18) minutes passed between the traffic stop and the arrival of the drug dog that he summoned, as well as the fact that all of the information needed for the citation was quickly and readily available to the officer, demonstrates to the Court that the Defendant was detained beyond the time necessary to accomplish the legitimate purpose of the traffic stop for speeding. The canine sweep of the Defendant's vehicle occurred after the time necessary to complete the traffic stop. The Court further finds that no circumstances described in the evidence of record would support a finding of reasonable suspicion or probable cause to detain the Defendant beyond the time reasonable to issue a speeding citation.

For the foregoing reasons, it is hereby ORDERED that the Defendant's motion to suppress is GRANTED.

We begin our review by observing that "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). That is, a trial court necessarily indulges the presumption that a warrantless search or seizure is unreasonable and the burden is on the state to demonstrate that one of the exceptions to the warrant requirement applied at the time of the search or seizure. *Id*.

Once the trial court has ruled on a suppression motion, our standard of appellate review requires acceptance of the trial court's findings regarding "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence," unless the evidence preponderates against the findings. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Cothran*, 115 S.W.3d 513, 519 (Tenn. Crim. App.), *perm. app. denied* (Tenn. 2003). The application of the law to the facts found by the trial court is, however, a question of law that is reviewed *de novo*. *Yeargan*, 958 S.W.2d at 629; *Odom*, 928 S.W.2d at 23.

The state recognizes that a reasonable traffic stop can become unreasonable and constitutionally invalid if the time, manner, or scope of the investigation exceeds the proper parameters. *See State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002). The state argues on appeal that there was no evidence at the suppression hearing that the time, manner, or scope of the investigation exceeded the proper parameters, and it cites Officer Cox's testimony that he was not stalling in completing the citation and that he took no longer than usual in filling out the citation. The state further insists that no evidence was introduced showing that the information needed for the citation was quickly and readily available to the officer, and the state points to Officer Cox's testimony that

it took time to call the dispatcher to check for warrants and to question the defendant about his height, weight, and year of his vehicle. As legal support for its argument, the state directs our attention to the decisions in *Illinois v. Caballes*, ___ U.S. ___, 125 S. Ct. 834 (2005), *United States v. Sharpe*, 470 U.S. 675, 105 S. Ct. 1568 (1985), and *United States v. Wellman*, 185 F.3d 651 (6th Cir. 1999).

The state's argument, in our opinion, is flawed in several respects. First, the trial court made several credibility determinations in connection with the defendant's and Officer Cox's testimony. The trial court found Officer Cox's time estimation – 17 to 18 minutes between the stop and the arrival of the drug dog – to be more reliable than the defendant's estimation that it took the officer about ten minutes to write the ticket. That determination by the trial court is eminently reasonable and will not be disturbed on appeal. *See Odom*, 928 S.W.2d at 23. The trial court also implicitly rejected Officer Cox's testimony that he was not "stalling" in completing the citation and that he took no longer than usual in filling out the citation. We are required to accept that credibility determination as the trial court was in the best position to evaluate Officer Cox's candor and because the evidence does not preponderate against that determination. *See id.* Additionally, the trial court, in our opinion, properly exercised common sense in examining the actual citation issued to the defendant and concluding that "all of the information needed for the citation was quickly and readily available to the officer."[2]

Second, in terms of what the evidence did or did not show, the burden of proof remained solidly on the state to demonstrate that one of the exceptions to the warrant requirement applied at the time of the search or seizure. The burden never shifted to the defendant. For that reason, the state's complaint that the record is devoid of evidence that the traffic stop was extended beyond the time necessary to issue the citation is not well taken. The defendant was not obligated to prove that he was detained beyond the time necessary to accomplish the initial purpose of the traffic stop for speeding. Instead, the state was obliged to show that the defendant was not detained beyond the time necessary to complete the traffic stop.

The state repeatedly attempts to justify the length of the detention in this case by arguing that Officer Cox contacted the dispatcher to check on the existence of any outstanding warrants for the defendant. The state, however, never elicited any evidence regarding how much time elapsed until the dispatcher responded to the officer's inquiry. Officer Cox testified that he *could not recall* how long it took the dispatcher to get back to him with the information. Moreover, the state offered no independent evidence, such as the dispatcher's testimony or records, to establish the time frame. Consequently, the state, in our opinion, failed to carry its burden of proof in connection with the warrantless search and seizure that occurred in this case.

---

[2] The citation issued by Officer Cox, which is Exhibit 1 in this record, is reproduced as an addendum to this opinion.

The last flaw in the state's argument relates to its reliance on *Caballes*, *Sharpe*, and *Wellman*. In *Caballes*, an Illinois State Trooper stopped the defendant for speeding, and when he radioed the police dispatcher to report the stop, a second trooper overheard the transmission and headed to the scene with his narcotics-detection dog. *See Caballes,* ___ U.S. at ___, 125 S. Ct. at 836. While the first trooper was in the process of writing a warning ticket, the second trooper walked his dog around the defendant's car. The dog then "alerted" at the trunk, and when the trunk was searched, the troopers found marijuana. *See id.* According to the Supreme Court's opinion, "The entire incident lasted less than 10 minutes." *Id.*

The Supreme Court granted *certiorari* to consider whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop. *See id.* at ___, 125 S. Ct. at 837. The Court concluded that a dog sniff performed on the exterior of the defendant's car "while he was lawfully seized for a traffic violation" did not rise to the level of a constitutionally cognizable infringement. *Id.* at ___, 125 S. Ct. at 838.

In connection with its decision, the Supreme Court was careful to point out the following:

> In the state-court proceedings, however, the judges carefully reviewed the details of Officer Gillette's conversations with respondent and the precise timing of his radio transmissions to the dispatcher to determine whether he had improperly extended the duration of the stop to enable the dog sniff to occur. We have not recounted those details because we accept the state court's conclusion that the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop.

*Id.* at ___, 125 S. Ct. at 837. By contrast, in the instant case, no such evidence was introduced by the state. The state relied entirely on Officer Cox's assertions that he had not extended the duration of the stop; the state offered no corroborating evidence. When, therefore, the trial court decided that Officer Cox's testimony was not credible on that point, nothing was left to consider.

The decision in *Sharpe* simply stands for the proposition that no hard-and-fast time limit exists beyond which a detention is automatically considered too long and, thereby, unreasonable. *See Sharpe*, 470 U.S. at 685-86, 105 S. Ct. at 1575. If anything, *Sharpe* underscores the need for the state to offer evidence to enable the trial court to examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly during which time it was necessary to detain the defendant." *Id.* at 686-87, 105 S. Ct. at 1575-76.

*Wellman* involved a traffic stop based on speeding with a subsequent canine sweep and alert for narcotics. The state is correct that the court in that case pointed out that "an officer can

lawfully detain the driver of a vehicle until after the officer has finished making record radiochecks and issuing a citation, because this activity 'would be well within the bounds of the initial stop.'" *Wellman*, 185 F.3d at 656 (quoting *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996)). *Wellman*, however, involved the defendant's appeal of the denial of his suppression motion, and the court was reviewing the lower court's findings, which included the officer's explanation about the delay in completing the traffic stop.

> Officer Jones testified that 15-20 minutes elapsed from the time he pulled over defendant's motor home to the time of completion of the search of the vehicle. The delay occurred because Officer Jones was waiting for the central office to provide him with information on defendant's driver's license and vehicle registration. Officer Jones testified that he began the driver's license and vehicle registration check before he asked for and received consent to search defendant's vehicle and before Officer Lane detailed his drug-sniffing dog around the mobile home. He testified that the driver's license and vehicle registration check had not been completed at the time of the search.

*Id*.

*Wellman*, in our opinion, illustrates the fact-intensive nature of the suppression issue and how the state's burden regarding a warrantless search or seizure and the appellate standard of review guide and determine the outcome. *Wellman* does not change the essential analysis or alter how this court reviews the trial court's factual findings and credibility determinations.

In summary, our review of the record reveals no evidence to preponderate against the trial court's finding that the defendant was illegally detained, without probable cause or reasonable suspicion, after the reasonable time for issuance of a speeding citation had passed. Accordingly, we affirm its ruling suppressing the narcotics and drug paraphernalia seized as a result and remand this case for further proceedings consistent with this opinion.

_____
JAMES CURWOOD WITT, JR., JUDGE

# ADDENDUM

A3CR0301 MISDEMEANOR CITATION 27513
AFFIDAVIT AND COMPLAINT

DOCKET NO. _____

**STATE OF TENNESSEE**
**COUNTY OF ANDERSON**
**CITY OF CLINTON** _____ CASE NO. _____

The undersigned, being duly sworn, upon his oath deposes and says:
On the __5__ day of __April__ 20__03__ at or about __10:20__ A.M./(P.M.)

DEFENDANT'S NAME __Justin Paul Bruce__
STREET ADDRESS __330 CE Paint Rock Valley R__
CITY __Philadelphia__ STATE __Tn__ ZIP __37874__ PHONE __463-6861__
BUSINESS/OCCUPATION __Kingsdown -__
ADDRESS _____ CITY __Knox__ STATE _____ PHONE _____
DOB __8-28-80__ AGE _____ S.S. NO. __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__
SEX __M__ RACE __W__ HT __5'4__ WT _____ HAIR __Brn__ EYES __Gn__
DL NO. __9119871__ STATE __Tn__ TYPE __O__ EXP. __05__
VEHICLE MAKE __Mtsb.__ TYPE __Eclipse__ STYLE __2dr.__ YEAR __86__
COLOR __Blk__ LICENSE NO. __HPY141__ STATE __Tn__ YEAR __03__

WHILE LOCATED IN THE CITY OF CLINTON, ANDERSON COUNTY, TENNESSEE, THE DEFEN-
DANT DID COMMIT THE FOLLOWING OFFENSE: _____
__Speeding 15-301__
__104 mph /__
__/ 55 mph.__

IN VIOLATION OF CLINTON CITY ORDINANCE OR TENNESSEE CODE ANNOTATED AT
THE LOCATION OF __N. Charles G. Seivers Blvd.__
__M-W -Bland Rd.__
OFFICERS NAME __Lt. Frank W. Cy__

MIDDLE
FIRST
LAST NAME

I hereby affix my signature with the understanding that such is not a plea of guilty,
but to certify that I have received a SUMMONS COPY of this citation and agree to appear
at the indicated time and place.

**NOTICE TO VIOLATOR: Please read the**
**back of this citation carefully.**

☑ I promise to appear before the Clinton City Court of Clinton, TN.
on the __13__ day of __May__ 20 __03__ at __8:30__ (A.M.)/P.M.

☐ I promise to appear before the Trial Justice Court of Anderson County in Clinton,
Tennessee on the _____ day of _____ 20 ____ at ____ A.M./P.M.

X __Justin Bruce__
DEFENDANT'S SIGNATURE

__Lt. Frank W. Cy__
OFFICER'S SIGNATURE

**THIS IS NOT A PLEA OF GUILT.**

SUMMONS