# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs December 2, 2003

### STATE OF TENNESSEE v. JOHN DAVID SMITH

**Direct Appeal from the Circuit Court for Tipton County**
**No. 4565     Joseph H. Walker, Judge**

---

**No. W2003-01200-CCA-R3-CD  - Filed April 6, 2004**

---

The defendant entered a guilty plea to possession of cocaine and properly reserved a certified question of law relating to the vehicular stop and subsequent seizure of the cocaine.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Gary F. Antrican, District Public Defender (on appeal), and J. Thomas Caldwell, Ripley, Tennessee (at hearing), for the appellant, John David Smith.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant pled guilty to simple possession of cocaine with two or more prior violations for simple possession, a Class E felony. *See* Tenn. Code Ann. § 39-17-418(a), (e) (2003). Pursuant to his plea, the defendant properly reserved the following certified question of law: "whether the stop, arrest, search and seizure of defendant's person and vehicle were in violation of defendant's rights against unreasonable search and seizure as provided by Article 1, Section 7 of the Constitution of the State of Tennessee and the Fourth Amendment to the Constitution of the United States of America."

Officer Larry McGarrity of the Covington Police Department testified that on June 8, 2002, he responded to an alleged burglary at a residence in Covington, Tennessee.  He stated that upon his arrival, he observed that a rear window of the residence "had been broken out."  The occupant, Ivory Jean Holland, informed Officer McGarrity that the defendant had attempted to gain entry into her residence.  The officer stated Ms. Holland also told him the defendant was currently driving her vehicle without her permission.  During Officer McGarrity's  discussion with Ms. Holland, the defendant drove by Ms. Holland's home in Ms. Holland's vehicle.  Officer McGarrity

testified he called for back-up and pursued the vehicle. Officer McGarrity radioed the vehicle's license plate number to the police dispatcher, who reported the vehicle was registered to Ivory Jean Holland. Officer McGarrity stated he then activated his blue lights and stopped the car. He approached the vehicle and asked the defendant for his driver's license. The defendant gave Officer McGarrity his license, and the officer returned to his vehicle and waited on another patrol car to arrive.

Officer McGarrity testified Officer Chris Payne arrived "[o]ne, maybe two minutes [later] at the most" with his drug dog, "Roscoe." Officer McGarrity informed Officer Payne about the reason for the stop. Roscoe was still in Officer Payne's patrol car. Officer McGarrity testified that he then saw Officer Payne, with Roscoe, scrutinizing the vehicle the defendant was driving. Within five minutes after arriving at the scene, Roscoe "indicated" the presence of drugs.

Officer Payne testified that when Officer McGarrity radioed for back-up, he was the closest car to McGarrity's location and proceeded directly to the scene with Roscoe. Upon Officer Payne's arrival, Officer McGarrity told him the driver of the vehicle was identified as a suspect of an attempted burglary. Officer Payne testified he knew the defendant had prior contact with law enforcement officers for drug-related activities, and therefore, he secured Officer McGarrity's permission to run Roscoe around the vehicle. Officer Payne asked the occupants to exit the vehicle and ran Roscoe around the car. He stated Roscoe indicated the presence of illegal narcotics "aggressively, scratching and biting at the driver's door." Officer Payne recalled he had been present at the scene "less than five minutes" when Roscoe indicated the presence of drugs.

After Roscoe alerted to the presence of drugs, Officer Payne searched the vehicle for narcotics. During the search, he discovered loose marijuana on the floorboard of the vehicle. Officer Payne asked the defendant if it would be "all right" if he searched the defendant for drugs or weapons, and the defendant consented to the search. In his search of the defendant, Officer Payne discovered a small amount of a white, rocklike substance which was later determined to be cocaine.

Officer Payne also testified that Roscoe had been trained in narcotics detection by a certified trainer through the Shelby County Sheriff's Department, and Officer Payne had been trained as his handler. He testified Roscoe was reliable in drug detection, and he had "never known [Roscoe] to be wrong."

The trial court found that Officer McGarrity had been told that an attempted burglary had taken place and that the defendant was driving the victim's car without her permission. The court found that Officer McGarrity observed the defendant driving the victim's vehicle, called to confirm that the car was registered in the victim's name, and then initiated the stop. Based on these facts, the trial court found that Officer McGarrity had a "reasonable basis" to stop the vehicle. The trial court further concluded that the canine sweep did not constitute a search under the Fourth Amendment and, therefore, required neither probable cause nor reasonable suspicion. The trial court noted that after the canine alerted to the presence of narcotics, the defendant consented to a search of his person that resulted in the drug seizure. The trial court denied the defendant's motion to suppress the evidence.

The defendant contends that the police lacked reasonable suspicion to effectuate the initial stop which led to his arrest and that any evidence discovered as a result of the defendant's illegal detention should, therefore, be suppressed. The defendant argues that Officer McGarrity acted on knowledge provided by an unknown informant, whose credibility, basis of knowledge and reliability were unknown and unexamined by the officer. The defendant asserts that Officer McGarrity's stop could not have been based on reasonable suspicion under these circumstances. We disagree.

Unless the evidence preponderates against them, the trial court's findings of fact in a suppression hearing will be upheld on appeal. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). If the issue involves an application of law to undisputed facts, the appellate courts conduct a *de novo* review as to the question of law. *State v. Troxell*, 78 S.W.3d 866, 870 (Tenn. 2002).

Initially, we observe that the officer may well have had probable cause for a custodial arrest of the defendant for attempted burglary when he stopped the vehicle. *See State v. Henning,* 975 S.W.2d 290, 300 (Tenn. 1998). If so, the officer could search the defendant's person incident to the arrest. *See State v. Crutcher*, 989 S.W.2d 295, 300-01 (Tenn. 1999). Thus, the seizure of cocaine from the defendant's person would be proper regardless of the other events. However, the state does not advance this argument. Accordingly, we will address the issue as the parties have; namely, whether the stop was justified based upon reasonable suspicion of criminal activity.

A policeman may make an investigatory stop when the officer has a reasonable suspicion, supported by articulable and specific facts, that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *see also State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002). For a court to determine whether a policeman's reasonable suspicion is supported by articulable and specific facts, the court must consider the totality of the circumstances. *State v. Simpson*, 968 S.W.2d 776, 783 (Tenn. 1998). This inquiry includes such factors as objective observations, information obtained from other officers or agencies, information obtained from citizens, and certain offenders' patterns of operation. *Id.*; *State v. Lawson*, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996).

When a traffic stop is an investigatory stop, the scope of the officer's actions must reasonably relate to the circumstances which prompted the stop; the detention must last no longer than necessary to effectuate the purpose of the stop. *Troxell*, 78 S.W.3d at 871. The officer must employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319 (1983).

The defendant contends that Officer McGarrity's initial stop was based on information received from an informant of unknown reliability whose basis for having the information was likewise unknown. When an officer initiates an investigatory stop of an automobile as a result of information provided by an "anonymous informant," there must be a showing of the informant's veracity and basis of knowledge. *State v. Keith*, 978 S.W.2d 861, 866 (Tenn. 1998). However, Tennessee applies a different standard to "citizen informants." *State v. Melson*, 638 S.W.2d 342, 354 (Tenn. 1982) (in the context of a search warrant affidavit). Information received from a "citizen informant" is presumed reliable and is not subject to the same degree of scrutiny as when the

information was received from a "confidential informant." *Id.* at 354-55. Ms. Holland was not an anonymous or criminal informant.

The record indicates Officer McGarrity responded to an alleged attempted burglary at a private residence. There is no indication from the record of any evidence which would mandate the use of heightened scrutiny applied to information supplied by a criminal or anonymous informant. Ms. Holland told the officer there was an attempted break-in; the officer observed a broken window; Ms. Holland identified the defendant, who was driving her car without permission, as the perpetrator; and the officer verified the car belonged to her before initiating the stop. The officer clearly had reasonable suspicion to stop the defendant.

The defendant contends that Officer Payne lacked reasonable suspicion to walk the canine, Roscoe, around the defendant's vehicle. A "canine sweep around the perimeter of a vehicle which has been legally detained does not constitute a search, and thus, does not require probable cause or reasonable suspicion so long as the duration of the canine sweep does not exceed the time necessary for the traffic stop." *State v. England*, 19 S.W.3d 762, 769 (Tenn. 2000). The testimony at the suppression hearing indicated that Officer Payne arrived with Roscoe "[o]ne, maybe two minutes at the most" after the defendant was stopped. Within five minutes of Officer Payne's arrival at the scene, Roscoe indicated the presence of contraband. The defendant was legally detained at the time of the indication, and the duration of the canine sweep was entirely reasonable.

In order to find that an officer had probable cause to search a vehicle based upon a positive alert by a trained drug detection dog, the dog's reliability must be established. *Id.* at 768. This allows consideration of the dog's training, record of false negative and false positive alerts, and the officer's training and experience with the dog. *Id.* At the suppression hearing, the officer testified about Roscoe's training and his own training as the handler. The officer stated that he had worked with Roscoe for over two years. He testified that he had "never known [Roscoe] to be wrong." Training and reliability were sufficiently established; thus, the canine's alert on the driver's door gave the officer probable cause to search the vehicle. *Id.* at 768-69.

We have previously concluded the stop was lawful, the detention of the defendant during the canine sweep was lawful, the canine's indication gave probable cause to search the vehicle, and marijuana was discovered in the vehicle. Immediately after discovering the marijuana in the car, the officer asked for and received the defendant's consent to search his person. A search conducted pursuant to consent is generally valid. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S. Ct. 2041 (1973). It is unnecessary for the officer to inform the person of the person's right to refuse consent. *United States v. Drayton*, 536 U.S. 194, 206, 122 S. Ct. 2105, 2113-14 (2002).

It appears from the record that the defendant's consent to be searched was freely and voluntarily given. During this search, Officer Payne discovered the cocaine. In addition, the marijuana discovery gave the officer probable cause to arrest the defendant and search his person incidentally to arrest. *See Crutcher*, 989 S.W.2d at 300-01. The seizure was valid.

The defendant's vehicle was lawfully stopped, and the defendant was lawfully detained at the time he consented to the search of his person. In addition, the officer had probable

cause to arrest the defendant and search his person incident to the arrest.  Accordingly, the seizure was valid.  The judgment of the trial court is affirmed.

_____

JAMES CURWOOD WITT, JR., JUDGE