# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 24, 2010 Session

## STATE OF TENNESSEE v. LARRY J. PATTERSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-D-3304     Amanda McClendon, Judge**

---

**No. M2008-01988-CCA-R3-CD - Filed September 30, 2010**

---

A Davidson County jury convicted the Defendant, Larry J. Patterson, of driving under the influence ("DUI"), first offense, and he was convicted after a bench trial of violation of the implied consent law. The trial court sentenced him to eleven months and twenty-nine days, thirty of which were to be served in jail, and it ordered that the Defendant's driver's license be revoked for a period of one year. The Defendant appeals, contending: (1) that the vehicle stop that led to his arrest was unlawful; and (2) that the trial court erred when it denied his motion for judgment of acquittal. After a thorough review of the record and applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J. delivered the opinion of the Court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Joseph A. Davidow, Nashville, Tennessee, for the Appellant, Larry J. Patterson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Kyle Anderson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from an incident in which police detained the Defendant while he was operating a vehicle on June 19, 2004. As a result of this stop, the Defendant was ultimately charged with DUI, first offense; possession of marijuana; resisting arrest; and violating the

implied consent law.

## A. Suppression Hearing

The Defendant filed a motion to suppress evidence obtained during a warrantless stop of his vehicle. At the hearing on the Defendant's motion to suppress, the following occurred: Officer Yannick Deslauriers, with the Metro Nashville Police Department, testified he was dispatched on June 19, 2004, to investigate a fireman's report that a driver was under the influence. The fireman had seen the driver almost hit another vehicle. The officer was headed to the area to which he had been dispatched when a vehicle approached him with flashing headlights. In this vehicle was the fireman, and the two men had a brief conversation about what the fireman had observed, including the license plate number of the driver he suspected was intoxicated.

The officer "ran" the license plate number and determined the address to which it was registered. He and other officers went to that address, where he saw a car that matched the car described by the fireman. The officers saw that an individual was seated in the driver's seat, asleep. The officer knocked on the window and asked the driver to roll down the window. The driver, whose eyes were extremely bloodshot, refused and lit a cigarette. The officer said the vehicle was still running, and the officers determined they should force the driver to exit for fear that he would drive his car back onto the public street. One officer retrieved a "slim jim" from his police cruiser while other officers talked with the driver. The driver repeatedly reached under his seat and behind his seat, and the officers were concerned that he was reaching for a weapon. Officers attempted to unlock the doors, but the driver held down the lock button and smoked his cigarette. As the driver climbed into the backseat and curled up as if to sleep, the officers unlocked the door.

Officer Deslauriers said that, after the door was unlocked, he got the driver, whom he identified as the Defendant, out of the car. He said, after a short struggle, during which the Defendant twisted and pulled his arms away, he handcuffed the Defendant and held him upright because the Defendant was unable to stand on his own. The Defendant smelled strongly of alcohol and refused all field sobriety tasks. The officer described the Defendant as "uncooperative." He said he read the Defendant the implied consent law, and the Defendant again refused to submit to any field sobriety tasks.

On cross-examination, Officer Deslauriers said he did not see the Defendant on a public road or in an area frequented by the public at large; rather, he saw him parked in the driveway of a private residence. While he observed the Defendant, he did not see the Defendant drink alcohol or smoke marijuana. The officer testified that he did not have an arrest warrant and did not see the Defendant commit a crime before he entered the driveway.

The information that led him to the Defendant's house came from the fireman and from "running" the license plate. The trial court recognized that a fireman is not a law enforcement official and is considered a "citizen" informant. The officer stated his belief that, by almost striking another vehicle while driving under the influence, the Defendant had already committed a felony.

Ronald E. Neeley,[1] the firefighter who witnessed the Defendant's erratic driving, testified that he was on his way to work and dressed in uniform when he saw the Defendant's car at a four-way stop. The car turned the same direction as Neeley, and Neeley followed behind the car on his way to work. As he topped a hill, he noticed that the car was "way over on the left hand side." Concerned, Neeley followed the car, dialed the dispatchers, and gave dispatchers a description of the car and the license plate number. The car eventually veered over the double yellow line, into the path of an oncoming van. The car and the van narrowly escaped colliding.

Neeley said he began flashing his lights at the car while he was speaking with the 911 dispatcher. After Neeley flashed his lights at the driver for nearly three miles, the car pulled into a little church parking lot. Neeley partially blocked the entrance, got out of his vehicle, and spoke with the driver. He asked the driver if he had a medical problem, in part because Neeley was an Emergency Medical Technician ("EMT"), and also because Neeley smelled a strong odor of alcohol on the Defendant. The driver told Neeley that he was going home, and Neeley went to his truck to move it out of the way. Before he could do so, the driver went "tearing past" Neeley, barely missing both Neeley and his truck. Neeley left the parking lot to go to work and, on his way, saw a police officer. He stopped and spoke with the officer about his interaction with the driver.

On cross-examination, Neeley testified that he had never investigated the commission of crimes or suspected crimes because he was a firefighter and not a police officer.

Based upon this evidence, the trial court denied the Defendant's motion to suppress.

**B. Trial**

At the Defendant's trial, Neeley again described noticing the Defendant's vehicle after it began driving erratically. He said that the two were traveling on a wide road, and the Defendant was repeatedly swerving from the curb-side of their lane, over the center line, and

---

[1] While this witnesses' name appears as Ronald Nely in the transcript of the suppression hearing, he testifies at the Defendant's trial that his name is Ronald E. Neeley. We will, therefore, refer to him as such throughout this opinion.

back. Neeley said the road then narrowed and the Defendant initiated a right turn onto Clarksville Highway while straddling the white line for the left turn. At this point, Neeley called the police dispatchers.

While Neeley was on the phone with dispatchers, the Defendant's car crossed the center line and was headed toward a van that was coming toward them in the oncoming lane. The van veered into the gravel on the side of the road, narrowly avoiding going into a ditch, and successfully avoided a collision with the Defendant's car. Neeley told the dispatcher that he was going to stop the Defendant because he was unsure whether the Defendant was intoxicated or suffering a medical emergency. Neeley started to flash his lights and blow his horn, and the Defendant eventually pulled over into a church parking lot. Neeley followed the Defendant into the parking lot and partially blocked the driveway where they had entered the church parking lot.

Neeley, who was wearing his firefighter uniform, approached the Defendant, who turned off his car, and asked the Defendant if he was okay. The Defendant remained in the driver's seat, and Neeley spoke to him through the driver's side window, which was lowered. Neeley noticed the Defendant's speech was slurred when he responded negatively to Neeley's questions about whether the Defendant was diabetic or suffered a heart condition. Neeley told the Defendant that some of his "friends" were on their way to make sure he got home safely, and the Defendant insisted he lived only a short distance away. After five to eight minutes of waiting, the Defendant became agitated. Neeley turned his back to the Defendant, and the Defendant noticed that his shirt said "Nashville Fire." The Defendant said to Neeley, "[W]ell, you're not the police." Neeley responded that he never told the Defendant he was a police officer, and the Defendant "tore out of the driveway slinging gravel" and missed hitting Neeley by approximately eighteen inches and missed Neeley's truck by four to six inches. Neeley got back into his vehicle and determined he could not catch up with the Defendant, so he continued on to work.

On cross-examination, Neeley conceded that he had previously testified he was getting into his truck when the Defendant left the driveway of the church parking lot. Neeley also conceded that he may have told the Defendant that the police were coming, rather than telling him that some of his "friends" were on their way. Neeley said the Defendant told him that he was tired and wanted to get home. Neeley did not recall seeing any alcohol containers and said he would not recognize the smell of marijuana as he had never smoked it before.

Neeley said, after he left the parking lot, he saw two police officers pass him. He stopped one of them and described the events that had occurred and offered them his name and telephone number. Neeley said he told the officers he smelled the odor of alcohol on the Defendant.

-4-

Officer Yannick Deslauriers, with the Metro Nashville Police Department, testified he was dispatched to a call about a possible drunk driver on June 19, 2004. He recalled that the dispatcher told him that a firefighter called dispatch to report the incident and the tag number of the suspect driver. After Officer Deslauriers spoke with Neeley, he ran the tag number Neeley gave to him, and he obtained the address to which that vehicle was registered. The officer proceeded to the Defendant's residence, where he found a gold Ford Taurus, matching Neeley's description, parked in the driveway. The Defendant was in the driver's seat asleep at the wheel, and the vehicle was still running.

Officer Deslauriers said he and other officers, who were dressed in uniform, knocked on the window and asked the Defendant to open the door. The Defendant's eyes were "extremely bloodshot and watery," and his pupils were dilated. The Defendant lit a cigarette and refused to unlock the doors. The officer said he could tell through the window that the Defendant was "extremely intoxicated," so he and other officers thought they needed to get the Defendant out of the running vehicle. Another officer, Officer Biggerstaff, retrieved a "slim jim" from his police cruiser and attempted to unlock the driver's door. The Defendant looked over, saw this, and reached out and held a finger on the lock button, preventing officers from unlocking the door from the outside.

At this point, officers noticed that the Defendant started to reach under his seat. Officer Deslauriers took a step back, fearing that the Defendant was reaching for a gun. The Defendant reached in the backseat also, and Officer Deslauriers repeatedly told him to "stop reaching around." Officer Biggerstaff went to the passenger side of the car to attempt to unlock it, and the Defendant climbed into the backseat of his car and "curled up" as if going to sleep. Officer Biggerstaff successfully opened the door, and Officer Deslauriers dragged the Defendant from the car. The Defendant struggled with him, pulling his hands away to prevent the officer from handcuffing him, despite Officer Deslauriers telling him that he was under arrest. The men's struggle brought them to the ground, where Officer Deslauriers eventually handcuffed the Defendant. The officer raised the Defendant off the ground, but the Defendant was so unsteady on his feet that the officer had to hold him to ensure he did not fall to the ground. The officer said the Defendant was incapable of standing on his own.

The officer brought the Defendant to his squad car, placed him in the back, read him the Miranda rights and the implied consent law. Officer Deslauriers noticed the Defendant smelled strongly of alcohol, his clothing was in disarray, and his speech was "very slurred." The officer described the Defendant as "extremely" intoxicated, but the Defendant refused to submit to any field sobriety tests. The Defendant asked police to retrieve from his car a large amount of money and his wallet, which they did. The officers also found "two real[ly] small items of marijuana" on the floorboard of the car near where the Defendant had been reaching while he was locked in his car.

On cross-examination, the officer agreed he neither saw the Defendant drive his car nor perform a field sobriety test. He agreed he did not have a search warrant or an arrest warrant for the Defendant. The officer said that, when he struggled with the Defendant, the Defendant did not strike, kick, or bite him. Officer Deslauriers testified he first approached the Defendant at around 5:45 a.m. and did not get him in handcuffs until approximately fifty minutes later. He advised him of his Miranda warnings at around 6:50 a.m. The officer said he did not initially smell marijuana, but he did smell it when he picked up the Defendant after handcuffing him. The officer agreed he did not know whether the used marijuana cigarettes had been smoked recently. The officer maintained that the Defendant attempted to prevent the officer from handcuffing him, even though he did not strike or hit the officer.

Harold Burke, a Metro Nashville Police Department officer, testified he responded to this call, which he understood involved a citizen who had observed a possible drunk driver. He arrived at the address to which the car the Defendant was driving was registered, where he and other officers found the Defendant sitting in the front seat of the running vehicle that was parked in the driveway. The Defendant appeared asleep but was awakened when officers knocked on the car window. The Defendant began reaching into the backseat and, at one point, lit a cigarette. The officer said there was an odor of alcohol coming from the vehicle, even though the windows were closed. The Defendant refused to open the door and prevented officers from doing so with a "slim jim" by holding down the lock button. The Defendant went into the back seat as if going to sleep, and officers were able to open the door. When officers pulled the Defendant from the car, the Defendant attempted to pull his hands away and would not put his hands behind his back. On cross examination, the officer said he did not know where the marijuana was found in the Defendant's vehicle.

Jeff Biggerstaff, an officer with the Metro Nashville Police Department, testified he responded to the call in this case and operated the "slim jim" to open the door. On cross-examination, he said he did not smell an odor of alcohol coming from the car as he was operating the "slim jim."

Brent Trotter, a special agent with the Tennessee Bureau of Investigation ("TBI"), testified that the two cigarettes found in the Defendant's vehicle contained marijuana. On cross-examination, he clarified that the two items he analyzed were cigarette butts from an already smoked cigarette.

Upon the conclusion of the state's proof, the Defendant made a motion for a judgment of acquittal. The trial court denied the Defendant's motion.

Mary Ann Newman testified on behalf of the Defendant, saying that she lived at the address where officers found the Defendant parked in a car. Newman said her family had

been friends with the Defendant's family "for years," and the Defendant had rented a room in her home for ten or fifteen years. Newman said she saw the Defendant the night before his arrest when she returned home from work at around 8:00 or 9:00 p.m. The Defendant was not consuming any alcohol or smoking marijuana. Newman said she had never seen the Defendant smoke marijuana or seen anything in their house to indicate such behavior. The Defendant told her that he was going to see his son but still had not left their home when she went to bed at around 11:00 p.m.

Newman said that the next morning, when she went to take a shower, she heard the door open twice, and she assumed it was the Defendant. She then heard knocking at the door, and when she answered the door, a female police officer was at the door and asked her to call the Defendant on his cell phone. Newman told the officer she did not have the Defendant's cell phone number, and, while Newman was looking in the house for the number, the officer returned and said they no longer needed the number because they had gotten the car door opened. Newman asked the officers whether they had found money she knew to be in the car. Newman said the Defendant, who was under arrest at the time, indicated to her that there was some money located in his car that he wanted Newman to take possession of, and, when he so indicated, he did not appear intoxicated.

Newman recalled that, two weeks before this incident, the Defendant had a tumor in his rectum that had to be removed. She said the Defendant also suffered sleeping problems as well as a condition related to his mouth, for which he required medication.

On cross-examination, Newman testified that the Defendant owned the car he was in when police found him. Newman said that, while she had driven the car, she had never smoked marijuana. Newman denied telling a police officer that, when the Defendant had called her the morning before his arrest, she told him not to drive because he was drunk.

Brenda Steinbrecher, an officer with the Metro Nashville Police Department, testified she responded to the call in this case and she interviewed Newman. Before interviewing her, she knocked on the door of the residence multiple times, and no one answered. Finally, Newman answered and said the Defendant had called her before police arrived, and he was intoxicated. She said she told the Defendant she did not want him at their home, which was why she did not answer the door initially. Newman wanted the officer to retrieve from the Defendant's car money that the Defendant had asked Newman to keep for him. On cross-examination, Officer Steinbrecher testified she did not have any notes of her interactions with Newman.

Based upon this evidence, the jury found the Defendant guilty of DUI first offense and not guilty of possession of marijuana. The State dismissed the resisting arrest charge. After

a bench trial as to the implied consent law violation, a transcript of which is not included in the record, the trial court found the Defendant guilty of violating the implied consent law.

## II. Analysis

On appeal, the Defendant contends: (1) that the police unlawfully seized him; and (2) that the trial court erred when it denied his motion for judgment of acquittal. The State counters first that the Defendant's notice of appeal was not timely filed. The State further argues that the Defendant was legally seized, making the trial court's denial of his motion to suppress proper, and that the evidence is sufficient to support the Defendant's convictions.

### A. Notice of Appeal

The State contends that the Defendant's notice of appeal was not timely filed because the trial court denied the motion for new trial on July 25, 2008, and the Defendant did not file his notice of appeal until Tuesday, August 26, 2008, which was one day late. Ordinarily, a trial court's judgment becomes final thirty days after the entry of the judgment, unless a notice of appeal or post-trial motion is filed. Tenn. R. App. P.4(a); *See State v. Boyd*, 51 S.W.3d 206, 211 (Tenn. Crim. App. 2000). After a judgment becomes final, the trial court loses jurisdiction over the matter. *Id.* An appeal as of right is initiated by the filing of a notice of appeal within thirty days of the entry of the judgment. Tenn. R. App. P. 3(e) and 4(a). The notice of appeal, however, is not jurisdictional and may be waived in the interest of justice. Tenn. R. App. P. 4(a). It is the defendant's responsibility to properly perfect his appeal or to demonstrate that the "interests of justice" merit waiver of an untimely filed notice of appeal. Tenn. R. App. P. 4(a).

In the case under submission, the record shows that the notice of appeal was filed one day beyond the date provided by the rules. The State argues that the "interests of justice" do not weigh in favor of waiving the timeliness requirement in this case. The Defendant does not offer an explanation for his late-filed notice of appeal, and the record does not appear to contain a motion to waive an untimely notice of appeal. We will, however, consider the appeal in the interest of justice.

### B. Search and Seizure

The Defendant contends his convictions should be reversed because he was unlawfully seized by police officers. He asserts officers lacked probable cause to arrest him after breaking into his car and dragging him out. In support of this contention, the Defendant asserts that Neeley's civilian observations did not provide police reasonable suspicion to stop the Defendant or probable cause to arrest him. He states the officers did not have reasonable

suspicion to approach and stop the Defendant when he was in his driveway. Further, he asserts that his driveway is private property and not a public place or thoroughfare, which gave him a heightened sense of privacy. The Defendant presented these issues to the trial court in a motion to suppress, and our review, therefore, is guided by the law governing our review of a trial court's denial of a motion to suppress.

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S .W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn.1997). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). Further, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *Henning*, 975 S.W.2d at 299.

Both the United States and Tennessee Constitutions protect against unreasonable searches and seizures. The Fourth Amendment of the U.S. Constitution proclaims that "the right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." The Tennessee Constitution provides "people shall be secure in their persons, houses, and papers and possessions, from unreasonable searches and seizures." Tenn. Const. art. I, § 7. Generally, to search a person's property, a warrant is needed, and, if a search is conducted without a warrant, "evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d at 629. A trial court accordingly presumes that a warrantless search or seizure is unreasonable unless the State demonstrates that one of the exceptions to the warrant requirement applies to the search. *Id.*

One exception to the warrant requirement is when an officer has probable cause to believe there has been some criminal action involving a vehicle. *Troxell*, 78 S.W.3d 866,

870-71 (Tenn. 2002). At that point, an officer may search a vehicle for evidence supporting that belief. *Id.* For example, an officer may stop and search a vehicle if he has probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 814-17 (1996); *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002); *State v. Vineyard*, 958 S.W.2d 730, 734-36 (Tenn. 1997). A second exception exists when specific and articulable facts give an officer reasonable suspicion that an offense has been, or is about to be, committed. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The reasonable suspicion that an officer must have in order to make an investigatory stop requires "considerably less" certainty than probable cause requires. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Whether reasonable suspicion exists is determined subjectively, by examining the totality of the circumstances surrounding the stop. *State v. Smith*, 21 S.W.3d 251, 256 (Tenn. Crim. App. 1999). An officer may base his investigatory *Terry* stop on personal observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *See State v. Lawson*, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996). The rational inferences that a seasoned officer draws from facts and circumstances may also support his reasonable belief. *Smith*, 21 S.W.3d at 256.

### 1. Reasonable Suspicion for Stop

As the State notes in its brief, the Defendant does not clearly identify the point at which he believes the police, in a legal sense, seized his person. Officer Deslauriers parked in the street, did not activate his blue lights, and walked up the driveway to where the Defendant was sitting in his parked but running car. The Defendant appeared to be asleep in the running car, and the officer woke him by knocking on the door. The Defendant and his car both matched the description provided to the officer by Neeley. Neeley had seen the Defendant driving erratically, almost colliding with another vehicle, had interacted with the Defendant, and had observed obvious signs of intoxication: the Defendant's speech was impaired, he smelled of alcohol, and he left the parking lot in a dangerous manner. The Defendant refused to open the door for Officer Deslauriers, and then smoked a cigarette while holding down the lock button in the vehicle to prevent officers from opening the vehicle. He repeatedly reached into the backseat, causing the officer concern for his own safety, and eventually climbed into the backseat, ostensibly to go to sleep.

We agree with the trial court that police officers had a reasonable suspicion that an offense had been, or was about to be, committed when they approached the Defendant's car, believing that the Defendant was intoxicated and driving. The car was still running, the Defendant was in the driver seat and in control of the car, and the description of the Defendant and his car matched the citizen informant's description. Information from a known citizen informant is presumed reliable. *See State v. Luke*, 995 S.W.2d 630, 636

(Tenn. Crim. App. 1998). We conclude the facts as presented provide sufficient support for the stop, and the Defendant is not entitled to relief on this issue.

## 2. Probable Cause for Arrest

The Defendant also asserts that police did not have probable cause to arrest him. The Defendant's argument focuses on the fact that Officer Deslauriers never saw him drive or in physical control of the car while "on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or any apartment house complex, or any other premises which is generally frequented by the public at large," which is a required element of DUI. *See* T.C.A. § 55-10-401. The State, however, counters that the officers had probable cause to arrest the Defendant for attempted aggravated assault because Neeley reported to officers that the Defendant had nearly run him over with his car. The State asserts that, because attempted aggravated assault is a felony, the offense was not required to be committed in the officer's presence for a warrantless arrest. *See* T.C.A. § 40-7-103(a)(2)

In Tennessee, an officer may arrest without a warrant in certain situations. These exceptions to the warrant requirement are set forth in Tennessee Code Annotated section 40-7-103. That statute provides, in part, that an officer may arrest a person without a warrant: "(1) for a public offense committed or a breach of the peace threatened in the officer's presence; (2) when the person has committed a felony, though not in the officer's presence; (3) when a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it; (4) on a charge made, upon reasonable cause, of the commission of a felony by the person arrested . . . ." T.C.A. § 40-7-103.

From the statute, it is clear that an officer may make a warrantless arrest "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." T.C.A. § 40-7-103(a)(3). Simply stated, the officer must have "probable cause to believe the person to be arrested has committed the crime." *State v. Lewis*, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000). Probable cause depends on whether the facts and circumstances and reliable information known to the officer at the time of arrest were "'sufficient to warrant a prudent [person] in believing that the [individual] had committed or was committing an offense.'" *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *State v. Melson*, 638 S.W.2d 342, 350 (Tenn. 1982)). Probable cause must be more than a mere suspicion. *Melson*, 638 S.W.2d at 350.

Aggravated assault is defined as:

-11-

(a) A person commits aggravated assault who:

> (1) Intentionally or knowingly commits an assault as defined in §
> 39-13-101 and:

>> (A) Causes serious bodily injury to another; or

>> (B) Uses or displays a deadly weapon[.]

T.C.A. § 39-13-102(a)(l)(A)-(B) (2006). A "deadly weapon" is "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(5)(B). That includes motor vehicles, depending upon the manner in which the motor vehicle is used. *See State v. Tate*, 912 S.W.2d 785, 787-88 (Tenn. Crim. App. 1995). With respect to criminal attempt, Code section 39-12-101 provides:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

>> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

>> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

>> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a)(l)-(3).

In the case under submission, we conclude that Officer Deslauriers had probable cause to arrest the Defendant for attempted aggravated assault. Neeley told Officer Deslauriers that the Defendant "tore out" of the driveway where the two were parked, missing hitting Neeley by approximately eighteen inches and missing Neeley's truck by four to six inches. Neeley related to the officer and to the 9-1-1 operator who dispatched the officer the License plate of the car that almost hit him. After researching the license tag number, the officer traveled

to the address where that plate was registered, where he found the Defendant sleeping behind the wheel of the running car. As previously stated, information from a known citizen informant is presumed reliable. *See Luke*, 995 S.W.2d at 636. Accordingly, based upon Neeley's recount and that the officer found the Defendant sleeping in a running car with plates matching Neeley's recount, the officer had probable cause to arrest the Defendant for attempted aggravated assault.

"Where an officer makes an arrest which is properly supported by probable cause to arrest for one offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *Duer*, 616 S.W.2d at 616 (citing 6A C.J.S. Arrest § 21 (1975)). "In other words, the test does not rest on the officer's subjective conclusion as to what offense has been committed. Rather, the test is whether the facts and circumstances present are sufficient to enable the court to see that some offense has been committed that would have justified a legal arrest." *Duer*, 616 S.W.2d at 616. Therefore, the fact that the officer had probable cause to arrest the Defendant for attempted aggravated assault justified his warrantless arrest for the Defendant. The Defendant is not entitled to relief on this issue.

### C. Motion for Judgment of Acquittal

The Defendant next contends that the trial court erred when it denied his motion for judgment of acquittal. We apply the same standard when reviewing whether a trial court erred in denying a motion for judgment of acquittal as when reviewing whether the evidence was sufficient to sustain a conviction. *See State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995). When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In such cases, however, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-

evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In the case under submission, the Defendant was convicted of DUI in violation Tennessee Code Annotated section 55-10-401. The statute states, in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08%) or more.

T.C.A. § 55-10-401(a)(1)-(2). For a defendant to be convicted of DUI, the State must prove beyond a reasonable doubt that the Defendant was driving or in physical control of a vehicle at the time the violation allegedly occurred. In determining whether the Defendant was in physical control of the vehicle:

> [T]he totality of the circumstances approach in assessing the accused's physical control of an automobile for purposes of T.C.A. § 55-10-401(a) should be followed in Tennessee. This method is neither so restrictive so as to thwart the obvious statutory aim of enabling the drunken driver to be apprehended before he maims or kills himself or someone else, nor is it so expansive as to permit a conviction where clearly not warranted, i.e., an intoxicated person sitting in the driver's seat of an automobile having no tires and mounted on blocks. Thus, when the issue is the extent of the accused's activity necessary to constitute physical control, as in the instant case, the test allows the trier of fact to take into account all circumstances, i.e., the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise. The same considerations can be used as circumstantial evidence that the defendant **had been driving** the vehicle.

*State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993) (emphasis added).

In this case, considering the totality of the circumstances, we conclude that the evidence is sufficient to support the Defendant's conviction for DUI. Officers found the Defendant sitting in the driver's seat of his running car. The Defendant's speech was slurred, he smelled strongly of alcohol, and, upon his exit from the car, he was unable to stand. Citizen witness Neeley testified that he followed the Defendant driving on a public roadway and saw the Defendant swerving across the lanes of traffic, almost hitting a van head-on. Further, Neeley stopped the Defendant and also noted his slurred speech and the odor of alcohol. This evidence is sufficient to support the Defendant's conviction, and he is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial

court's denial of the Defendant's motion to suppress, and we affirm the Defendant's convictions.

_____
ROBERT W. WEDEMEYER, JUDGE